**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PEGGY LOPEZ,<br>Plaintiff,<br>v.<br>LASSEN JACKSON COMMUNITY PARTNERS, et al.,<br>Defendants. | No. 2:17-CV-1451-KJM-DMC<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff, who is proceeding pro se, brings this civil action. Pending before the court are separate unopposed motions to dismiss filed by defendants Lassen Jackson Community Partners, Amand Kannan, MBS Property Management, Inc., The Beneficial Housing Foundation, and WNC Development Partners (Doc. 14) and defendant North American Risk Services (Doc. 15).[1]

/ / /

/ / /

/ / /

/ / /

[1] Other named defendants – Vinyl Designs, Precision General Contracting Company, Inc., Mercury Insurance Group – appear not to have yet been served.

## I. PLANITIFF'S ALLEGATIONS

This action proceeds on plaintiff's original complaint (Doc. 1). Plaintiff names the following as defendants: (1) Lassen Jackson Community Partners; (2) Amand Kannan; (3) Vinyl Designs; (4) MBS Property Management, Inc., (5) Precision General Contracting Company, Inc., (6) Mercury Insurance Group; (7) North American Risk Services; (8) The Beneficial Housing Foundation; and (8) WNC Development Partners. Plaintiff asserts the basis for this court's jurisdiction is a federal question under the Fair Housing Act. See id. at 2. Plaintiff asserts the following factual allegations:

> 1. Plaintiff rented an apartment in Fall 2012 at the Lassen View Apartments in Red Bluff, California.
>
> 2. The Lassen View Apartments were designed for seniors and funded under a federal housing program.
>
> 3. In early 2015, all tenants at the Lassen View Apartments, including plaintiff, were informed the property had been sold to defendant Kannan and that a new property management company, defendant MBS Property Management, Inc., would be taking over management responsibilities.
>
> 4. Tenants were invited to attend a meeting with staff from MBS Property Management, Inc., as well as staff from defendant Precision General Contracting Company, Inc., which apparently had been contracted to remodel the apartments.
>
> 5. At this meeting, plaintiff asked whether grab bars currently installed in the bathrooms would be re-installed after the remodel.
>
> 6. Plaintiff did not want the carpet in her unit removed as part of the remodeling process.
>
> 7. As to grab bars, plaintiff was informed that she would have to request an accommodation to have them replaced as part of the remodel.
>
> 8. Plaintiff made the requested accommodation as part of "the mass application for occupancy with the new owner" and was never informed this request was insufficient to ensure replacement of the grab bars.
>
> 9. Plaintiff lived next door to a neighbor she considered hostile and "did not want to have to pack everything up in her apartment and still live next door to a hostile neighbor."

/ / /

/ / /

10. Plaintiff spoke on the phone in early May 2015 with Mike Hawthorn, the manager with defendant MBS Property Management, Inc., to ask if she could move into a different apartment sometime during the remodel but, according to plaintiff, never received an answer.

11. Plaintiff informed Mr. Hawthorn she was "now dedicated to finding a new place to live."

12. Sometime in May 2015, defendant Kannan determined "that one grab bar was to be replaced in all of the apartments being remodeled."

13. New shower-tub enclosures were installed in all apartments with one grab bar at the entrance wall but without any grab bars along the back of the enclosure.

14. Plaintiff complained about the lack of the second grab bar along the back of the enclosure.

15. Plaintiff states the one grab bar along the entrance that was replaced was done so with loose screws.

16. According to plaintiff, Mr. Hawthorn failed to show up for a meeting in June 2015 to "check the construction progress" in the apartment and to answer questions.

17. At this point, plaintiff believed retaliation was occurring.

18. Plaintiff states that an "agent" with defendant Precision General Contracting Company, Inc., "came to find out what Peggy Lopez was complaining about" and plaintiff explained the dangerous nature of the improperly installed grab bar and the lack of a second grab bar at the back of the shower/tub enclosure.

19. Upon returning from a visit with her daughter in North Dakota in July 2015, plaintiff noticed her desk had been damaged during the remodel.

19. Plaintiff also learned that, despite being assured tenants' furniture would be stored in enclosed storage units during the flooring remodel, her furniture "had been set outside of her apartment and left there on one of the hottest days of the summer," causing the glue on her desk to melt and causing the molding to come apart.

20. On July 14, 2017, while pulling her suitcase from her trip to her apartment, plaintiff "turned the corner from the public sidewalk to the short sidewalk to her door and found herself flat on the ground across her sidewalk."

21. According to plaintiff, she fell due to bolts which were left behind after removal of a handrailing along the sidewalk.

22. Plaintiff states she met with representatives of defendants Mercury Insurance Group and North American Risk Services regarding the fall.

23. Plaintiff claims she was informed by defendant North American Risk Services it was not the insurance carrier for defendant Vinyl Designs.

24. On August 25, 2015, plaintiff received a notice from defendant MBS Property Management, Inc., informing her that a failure to provide required information "for recertification" would result in a 30-day notice to terminate.

25. On August 26, 2015, plaintiff was blocked from her apartment, apparently due to landscaping work being done without any notice to tenants.

26. On July 12, 2016, plaintiff was informed that she had been accepted as a tenant at another federally subsidized housing project.

27. According to plaintiff:

> On August 16, 2016, Peggy Lopez had a telephone conversation with Diane Everhart, Resident Manager Lassen View Apartments. Diane states to Peggy that Peggy could move any time. Peggy explained that the new property she would be renting was federally subsidized. The manager at Peggy's new property had informed Peggy that it was against the law for Peggy to pay rent at two federal properties. Peggy explained this understanding of the law limiting to rent payment on only one federally subsidized property. Diane stated that Diane could do something on the computer and it would show that Peggy was not a tenant, without refunding the paid rent to Peggy. Peggy felt threatened and thought that this was a fraud on the federal government and Peggy could be barred from renting federal subsidized housing in the future if Peggy went along with what seems a scheme to get Peggy barred from federal subsidized housing.

See id. at 4-11.

Plaintiff asserts these facts give rise to the following claims: (1) violation of the Fair Housing Act; (2) slander per se; (3) negligence; (4) premises liability; (5) false imprisonment; (6) oppression and elder abuse; (7) insurance fraud and bad faith; and (8) negligent infliction of emotional stress. See id. at 11-4. As to the Fair Housing Act claim, plaintiff states:

> Violation of the Fair Housing Act, a violation of Peggy's Civil Rights. The Fair Housing Act was developed to protect certain classes of citizens from discrimination in housing. Aman Kannan, Lassen Jackson Community Partners, MBS Property Management Inc., Vinyl Designs, Inc., Precision GCC, Inc., Beneficial Housing Foundation, and WNC Development Partners through harassment have attempted to force Peggy Lopez from living in peace until she could find safe affordable alternative housing. Peggy Lopez is a member of the class of citizens the Fair Housing Act was designed to protect. Each act of forcing Peggy to argue

> to keep the grab bars in her shower/bath enclosure (keep her apartment safe), threatening to evict Peggy, asking Peggy to break the law by paying rent at two separate federal subsidized housing units, not noticing Peggy of the landscaping work that would force her to either be locked into her apartment or barred from entering her apartment, causing Peggy emotional stress, making her home feel unsafe, failing to completely repair the damage to Peggy's property, inviting Peggy to commit fraud on the federal government, alone is not an indication of discrimination. Gathered all together the combined events are to push Peggy Lopez out of federally subsidized housing. Peggy Lopez is a senior citizen and handicapped. . . .
>
> Id. at 11-12.

## II. STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## III. DISCUSSION

### A. Defendants Lassen Jackson Community Partners, Amand Kannan, MBS Property Management, Inc., The Beneficial Housing Foundation, and WNC Development Partners

In their unopposed motion to dismiss, defendants Lassen Jackson Community Partners, Amand Kannan, MBS Property Management, Inc., The Beneficial Housing Foundation, and WNC Development Partners argue that plaintiff has not stated a plausible claim for relief under the Fair Housing Act (FHA). Regarding plaintiff's assertion of a claim under the FHA,

/ / /

/ / /

defendants contend:

> Plaintiff's claim of federal jurisdiction appears to be based entirely on the federal Fair Housing Act ("FHA") (42 U.S.C. §§ 3601, et seq.) As a preliminary matter, it is not entirely clear what provisions of the FHA were allegedly violated. The "Basis for Federal Jurisdiction" section of the complaint lists six different sections or subsections of the FHA. (ECF No. 1, at 2.) The remainder of the complaint does not state which of those sections were allegedly violated, or how. The complaint's vagueness alone provides a standalone basis to dismiss the action for failure to state a claim upon which relief may be granted. *E.g., Prime Healthcare Sevs. – Shasta, LLC v. United Healthcare Servs.*, 2017 U.S. Dist. LEXIS 162863, at *8-9 (E.D. Cal. Sept. 29, 2017) (*See* Declaration of Adam C. Young in Support of Motion to Dismiss, Exh. A.).
>
> Further, the complaint does not state a plausible claim for relief under the FHA. 42 U.S.C. § 3604(b), the anti-discrimination provision of the FHA, makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(f)(2) extends the same protections from discrimination on the basis of physical handicap. A prima facie claim of discrimination under the FHA requires the plaintiff to prove that "a protected group has been subjected to explicitly differential -- i.e. discriminatory -- treatment." *Community House, Inc. v. City of Boise*, 468 F.3d 1118, 1125 (9th Cir. 2006).
>
> 42 U.S.C. § 3617, the anti-retaliation provision of the FHA, makes it unlawful to "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by" the substantive anti-discrimination provisions of the FHA. In order to make out a prima facie case for retaliation under the FHA, a plaintiff must show that "(1) [s]he engaged in a protected activity; (2) the defendant subjected [her] to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).
>
> Plaintiff's complaint does not make out a plausible claim that she was discriminated against on the basis of any protected class, or that she was subjected to retaliation on the basis of reporting any such discrimination. Plaintiff alleges that she is a senior citizen who is also disabled. However, she does not state any facts which might support a plausible inference that she was treated differently from other tenants on the basis of either classification. In fact, Plaintiff does not allege that she was dissimilarly situated from any other tenants in her complex. The complaint alleges that the Lassen View Apartments were designed for seniors and funded under USDARD. (ECF No. 1, at 4.) That being the case, her complaints about any of the conduct referenced in the complaint also cannot plausibly form the basis for a retaliation charge under FEHA. Accordingly, her claim (or claims) under FEHA must be dismissed.

/ / /

/ / /

As defendants note, plaintiff alleges the Lassen View Apartments is a federally subsidized housing project for seniors. Plaintiff further alleges that she is a senior citizen. It is reasonable to infer from this alleged fact all of the other tenants at the Lassen View Apartments are also seniors. Plaintiff specifically alleges that she is a senior citizen. According to defendants, plaintiff cannot sustain a discrimination claim under the FHA based on her status as a senior citizen because all tenants at the Lassen View Apartments are senior citizens and, therefore, plaintiff cannot establish she was treated differently than any other tenant on the basis of her age. Though there are no facts alleged in the complaint to indicate all tenants are also handicapped, as plaintiff alleges she is, defendants make the same argument as to discrimination based on that status.

At the outset, the court finds defendants' reliance on Community House, Inc. v. City of Boise, 468 F.3d 1118 (9th Cir. 2006) is misplaced. In Community House, plaintiffs challenged a men-only policy at a homeless shelter. See id. In reversing the district court's denial of a preliminary injunction in favor of female plaintiffs, the Ninth Circuit held the policy of not allowing women was facially discriminatory. See id. The court so held even though all of the allowed residents of Community House were the same gender and, therefore, none were being treated differently on account of gender. Thus, the relevant inquiry is whether plaintiff is being treated differently than other member of the community in general, not whether she is being treated differently than other residents of the Lassen View Apartments.

The court nonetheless agrees with defendants' overall argument plaintiff fails to state a discrimination claim under the FHA because her claims are vague. According to plaintiff, defendants' conduct violated sections 804(f)(1)(B), 804(f)(2), 804(f)(3)(A), 804(f)(3)(B), 813(a)(1)(A), and 818 of the FHA. See Doc. 1, p. 2. Plaintiff does not, however, explain which alleged conduct by which named defendant violated which provision such that defendants can be said to be on fair notice as to both the legal and factual nature of any specific claimed violation as to any particular defendant. See Bell Atl. Corp, 550 U.S. at 555. Plaintiff's complaint should be dismissed with leave to amend her FHA claims.

/ / /

**B. Defendant North American Risk Services**

Defendant North American Risk Services argues in its separate unopposed motion to dismiss plaintiff fails to state any viable claims against it under state law. Because, for the reasons discussed above, plaintiff does not currently plead a viable federal claim such as would confer subject matter jurisdiction on this court, the court could decline to exercise supplemental jurisdiction over plaintiff's state law claims, which are the subject of defendant North American Risk Services' motion. It is possible, however, plaintiff will be able to amend her complaint to state claims under the FHA upon which relief can be granted, in which case plaintiff's state law claims would properly be the court incident to a cognizable federal claim. The undersigned, therefore, recommends the District Judge deny defendant's motion without prejudice to renewal upon the filing of a first amended complaint.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. The unopposed motion to dismiss by defendants Lassen Jackson Community Partners, Amand Kannan, MBS Property Management, Inc., The Beneficial Housing Foundation, and WNC Development Partners (Doc. 14) be granted;

2. The unopposed motion to dismiss by defendant North American Risk Services (Doc. 15) be denied without prejudice to renewal upon the filing of a first amended complaint; and

3. Plaintiff's complaint be dismissed with leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 11, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE